IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DAN ELLISTON, individually and on behalf of all others similarly situated,**  *Plaintiff*, <br><br> **v.** <br><br> **PORTFOLIO RECOVERY ASSOCIATES, LLC**  *Defendant* | § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 3:17-cv-804 <br><br> JURY |

## ORIGINAL CLASS ACTION COMPLAINT

### *Jury Trial Requested*

Plaintiff Dan Elliston (hereinafter "Plaintiff") files this Original Class Action Complaint. Plaintiff institutes the action in accordance with, and to remedy violations by, Portfolio Recovery Associates, LLC of the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692, *et seq.* (hereinafter "FDCPA") the Texas Debt Collection Act, TEX. FIN. CODE § 392.001, *et seq.* (hereinafter "TDCA") and the Telephone Consumer Protection Act, 47 U.S.C.A § 227, *et seq.* (hereinafter "TCPA"). Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter "Class Members") to recover damages and to enjoin Defendant from its unlawful conduct.

### I.
### PARTIES

1. Plaintiff Dan Elliston is a natural person who resides in Dallas County, Texas and is a "consumer" as defined by 15 U.S.C. §1692a(3) and TEX. FIN. CODE § 392.001(1).

2. Defendant Portfolio Recovery Associates, LLC is a Virginia corporation which operates as a collection agency. Its primary business is the purchase of delinquent and defaulted debt and/or the collection of debt owed to others and is, therefore, considered to be a "debt collector" as the term is defined and understood pursuant to 15 U.S.C. § 1692a(6) and TEX. FIN. CODE § 392.001(6).

3. Defendant's registered address with the Texas Secretary of State is 120 Corporate Boulevard, Suite 100, Norfolk, Virginia 23502 and may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

4. All conditions precedent to Plaintiff proceeding with this lawsuit have occurred.

## II.
## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Plaintiff alleges several nationwide classes, which will result in at least one class member from each class belonging to a state different than the state in which the Defendant is deemed to reside.

6. Pursuant to 28 U.S.C.A. § 1367(a), Plaintiff and Class Members invoke the supplemental jurisdiction of this Court to hear and decide claims against the Defendant arising under state law.

7. Venue in this District is appropriate under 28 U.S.C.A. §§ 1391 (b) and (c) and 1441(a) because: (i) Defendant is actively doing business in this State and is subject to personal jurisdiction throughout the State; (ii) Defendant transacts business in the State and in the District by and through the collection of consumer debts in this State and District; and (iii) a substantial part of the acts, transactions, events and/or omissions giving rise to the claims occurred in this District.

Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to these claims.

## III.
## THE FAIR DEBT COLLECTION PRACTICES ACT, ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

8. In enacting the FDCPA, Congress explicitly found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). As stated in the preamble to the law, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The statute is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) *citing Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Given this purpose, it logically follows that "[t]he FDCPA does not require proof of actual damages as a condition to the recovery of statutory damages." *Smith v. Procollect, Inc.*, 2011 WL 1375667, *7 (E.D. Tex. April 12, 2001) (citations omitted). "In other words, the FDCPA 'is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not.'" *Id. quoting Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998).

## IV.
## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 ("TCPA"), 47 U.S.C. § 227

9. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227

(TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10.     The TCPA regulates, among other things, the use of automated telephone dialing equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. [2]

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. [3]

12.     The Federal Communications Commission has defined a "predictive dialer" as:

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers . . . [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dealer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. [4]

Moreover, the FCC has determined that a "predictive dialer falls within the meaning and statutory

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq*.

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] 2003 TCPA Order, 18 FCC Rcd at 14091, para. 131.

definition of 'automatic telephone dialing equipment' and the intent of Congress."

## V.
## FACTS RELATED TO PLAINTIFF DAN ELLISTON

13. On or before March 14, 2016, an obligation (the "Debt") was allegedly incurred by Plaintiff to an original creditor ("Creditor").

14. The Debt arose out of a transaction in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes and therefore it meets the definition of a "debt" under 15 U.S.C. § 1692a(5) and TEX. FIN. CODE § 392.001(2).

15. Creditor is a "creditor" as defined by 15 U.S.C. § 1692a(4).

16. On or before March 14, 2016, the Debt was assigned to, purchased by, or transferred to Defendant for collection, or Defendant were employed by Creditor to collect the Debt.

17. Defendant meets the definition of a "debt collector" under TEX. FIN. CODE § 392.001(6) and 15 U.S.C. § 1692a(6).

18. Defendant contends that the Debt is in default.

19. On or about March 14, 2016, Defendant called Plaintiff on his cell phone in an attempt to collect the Debt.

20. On this phone call, Defendant failed to identify itself as a debt collector.

21. This phone call meets the definition of "debt collection" under TEX. FIN. CODE § 392.001(5) and the definition of "communication" as defined by 15 U.S.C. §1692a(2).

22. In placing this phone call, Defendant engaged in "communications" as defined by 15 U.S.C. § 1692(a)(2).

23. Defendant initiated four telephone calls to Plaintiff's cell phone from March 14, 2016 through March 22, 2016.

24. Plaintiff sent Defendant a Cease and Desist letter on March 22, 2016 via email and via Certified Mail Return Receipt Requested. The Cease and Desist letter stated, among other things, that Defendant was to contact Plaintiff in writing only, and to cease all phone calls to Plaintiff, and requested that Defendant validate the debt. (See Exhibit "A").

25. Defendant responded to the emailed letter on March 28, 2106 via email. (See Exhibit "B") Delivery and receipt of the letter sent by certified mail was received by Defendant and signed for on March 28, 2016 (See Exhibit "C").

26. Despite its receipt of this letter via email and clearly subsequent to receipt of the letter sent via certified mail return receipt requested, Defendant continued to call Plaintiff's cell phone, initiating fifteen additional calls via ATDS to Plaintiff from March 22, 2016 through June 20, 2016.

27. Defendant has called Plaintiff from five different cities using nine different telephone numbers. (See Exhibit "D").

28. Defendant did not properly identify itself when it called.

29. Defendant has made no attempt to contact Plaintiff in writing regarding the alleged debt except for its response to Plaintiff's email, which contained no validation. In fact, Defendant has never validated the alleged debt, and thus Plaintiff is – and remains to this day – uncertain as to what debt, if any, Defendant is calling about.

30. Defendant could have taken the steps necessary to bring its actions within compliance with the FDCPA and the TCPA, but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

31. The telephone number Defendant called was assigned to a cellular telephone service.

32. The telephone call constituted a call that was not for emergency purposes as defined by 47

U.S.C. § 227(b)(1)(A)(1).

33. The above unlawful practices are Defendant's routine procedures for collecting consumer debts.

34. The collection or attempted collection of consumer debts in the aforementioned manner violates both state and federal collection laws.

## VI.
## CLASS ALLEGATIONS

35. This action is maintained as a class action on behalf of the following described classes (hereinafter collectively referred to as "the Classes"):

   a. FDCPA Class: All persons who reside in the United States and from whom, on or after March 22, 2016 Defendant sought to collect, or did collect, a consumer debt and to whom Defendant placed a telephone call.

   b. TDCA Class: All persons who reside in the State of Texas and from whom, on or after March 22, 2015 Defendant sought to collect, or did collect, a consumer debt and to whom Defendant placed a telephone call.

   c. TCPA Class: All persons who reside within the United States and who were called by Defendant from July 2, 2013 though the present, in an attempt to collect a debt, using an automatic telephone dialing system, where the call was placed to the person's cellular telephone number that Defendant did not obtain either from a creditor or directly from the person himself or herself and/or where the call was placed to the person's phone number after the person had revoked prior express consent.

   Excluded from each of the above Classes are all employees, including, but not limited to, Judges, clerks and court staff and personnel, of the United States District Court, their spouses, and any minor children living in their households. Also excluded are employees of Defendant, their spouses, and any minor children living in their households. Also excluded are Class counsel and their employees, their spouses, and any minor children living in their households.

36. The unlawful actions of Defendant entitles Plaintiff and each Class Member to actual and statutory damages as well as injunctive relief.

37. The members of the Classes for whose benefit this action is brought are so numerous that joinder of all Class Members is impracticable. The exact number of Class Members is unknown to Plaintiff. However, the number of the Class Members is reasonably believed to be in the thousands, and they can be determined from records maintained by Defendant.

38. Plaintiff will fairly and adequately protect the interests of each Class Member and have retained counsel experienced and capable in class action litigation and in the fields of debt collection and consumer law. Plaintiff understands and appreciates his duty to each member of the Class under FED. R. CIV. P. RULE 23 and is committed to vigorously protecting the rights of absent Class Members.

39. Plaintiff is asserting claims that are typical of the claims of each Class Member he seeks to represent, in that Defendant engaged in the collection and/or attempted collection of debts from each Class Member they seek to represent in the same manner—and utilizing the same method—as Defendant utilized against Plaintiff. All claims alleged on behalf of each Class Member flow from this conduct. Further, there is no conflict between Plaintiff and any Class Member with respect to this action.

There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented. Questions of law and fact arising out of Defendant's conduct are common to all Class Members, and such common issues of law and fact predominate over any questions affecting only individual Class Members.

40. Issues of law and fact common to members of the FDCPA class include, but are not limited to, the following:

   a. Whether Defendant is a "debt collector" as that term is defined by the Fair Debt Collection Practices Act;

    b.    Whether Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act;

    c.    Whether the debt that Defendant sought to collect was a "consumer debt" as defined by the Fair Debt Collection Practices Act;

    d.    Whether Defendant's conduct violated 15 U.S.C. §1692c(a)(1) by calling Plaintiff at a time or place known to be inconvenient for Plaintiff;

    e.    Whether Defendant's conduct violated 15 U.S.C. §1692c(c) by communicating with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff;

    f.    Whether Defendant's conduct violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt;

    g.    Whether Defendant's conduct violated 15 U.S.C. §1692g by failing to send Plaintiff the required notice within five days of PRS's initial communication with Plaintiff;

    h.    Whether Defendant's conduct violated 15 U.S.C. §1692g by continuing its efforts to collect the debt without first validating the debt pursuant to Plaintiff's written request;

    i.    Whether Defendant is liable for damages and the amount of such damages; and

    j.    Whether Plaintiff and FDCPA Class members are entitled to an award of attorneys' fees and costs.

41.    Issues of law and fact common to members of the TDCA class include, but are not limited to, the following:

    a.    Whether Defendant is a "debt collectors" as that term is defined by the Texas Debt Collection Act;

    b.    Whether Plaintiff is a "consumers" as defined by the TDCA;

    c.    Whether the debt that Defendant sought to collect was a "consumer debt" as defined by the TDCA;

    d.    Whether Defendant's conduct violated TEX. FIN. CODE § 392.302(2) by "placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass and threaten a person at the called number."

    e.    Whether Defendant's conduct violated TEX. FIN. CODE § 392.302(4) by "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number";

    f.    Whether Defendant is liable for damages and the amount of such damages;

    g.    Whether Plaintiff and Class Members are entitled to seek an injunction against Defendant to prevent or restrain further violations of the TDCA; and

    h.    Whether Defendant directly and proximately caused Plaintiff and Class Members injury for which they are entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs, declaratory relief, injunctive relief, and other legal and equitable relief.

42.    Issues of law and fact common to members of the TCPA class include, but are not limited to, the following:

    a.    Whether Defendant made calls to Plaintiff and Class members' cellular telephones using an automatic telephone dialing system;

    b.    Whether such practice violates the TCPA;

    c.    Whether Defendant's conduct was knowing and willful;

    d.    Which services or processes Defendant employed to obtain class members' cellular telephone numbers;

    e.    Which technologies or services were available to Defendant to enable it to differentiate between wireless numbers and wireline numbers;

    f.    Whether Defendant is liable for damages and the amount of such damages; and

    g.    Whether Defendant should be enjoined from engaging in such conduct in the future.

43.    The relief sought by each Class Member is common to the entirety of each respective class.

44.    Defendant has acted on grounds generally applicable to each member of each of the Classes, thereby making formal declaratory relief or corresponding injunctive relief appropriate with respect to the Classes as a whole. Therefore, certification pursuant to FED. R. CIV. P. 23(b)(2) is warranted.

45. For each of the Classes, this action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for Defendant.

46. This action is properly maintained as a class action in that the prosecution of separate actions by Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

47. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

   a. significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

   b. the size of the individual damages claims of most Class Members is too small to make individual litigation an economically viable alternative, such that few Class Members have any interest in individually controlling the prosecution of a separate action;

   c. without the representation provided by Plaintiff herein, few, if any, Class Members will receive legal representation or redress for their injuries;

   d. class treatment is required for optimal deterrence;

   e. despite the relatively small size of the claims of many individual Class Members, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

   f. no unusual difficulties are likely to be encountered in the management of this class action;

      g.    absent a class action, Defendant's illegal conduct shall go unremedied and uncorrected; and

      h.    absent a class action, the members of the class will not receive compensation and will continue to be subjected to Defendant's illegal conduct.

48. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class, and result in judicial consistency.

## VII.
## CAUSES OF ACTION

### COUNT ONE
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq.*

49. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

50. Defendant is a debt collector as defined by the FDCPA. *See* 15 U.S.C. § 1692a(6).

51. Plaintiff is a consumer as defined by the FDCPA. *See* 15 U.S.C. § 1692a(3).

52. The debt that Defendant sought to collect was a consumer debt as defined by the FDCPA. *See* 15 U.S.C. § 1692a(5).

53. Defendant's conduct violated 15 U.S.C. §1692c(a)(1) in that Defendant called Plaintiff at a time or place known to be inconvenient for Plaintiff.

54. Defendant's conduct violated 15 U.S.C. §1692c(c) in that Defendant communicated with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff.

55. Defendant's conduct violated 15 U.S.C. §1692d in that Defendant engaged in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

56.     Defendant's conduct violated 15 U.S.C. §1692g in that Defendant failed to send Plaintiff the required notice within five days of Defendant's initial communication with Plaintiff.

57.     Defendant's conduct violated 15 U.S.C. §1692g in that Defendant continued its efforts to collect the debt without first validating the debt pursuant to Plaintiff's written request.

58.     Congress enacted the FDCPA to prevent real harm.  Under the FDCPA, the Plaintiff has a statutory right to not be subjected to harassing calls.  The harm that Plaintiff has alleged is exactly the harm Congress targeted by enacting the FDCPA. Congress "elevat[ed]" these "concrete, de facto" injuries "to the status of legally cognizable injuries." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Its aim was "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).

59.     As a result of Defendant's violations of 15 U.S.C. § 1692, *et seq.*, Plaintiff and Class members are each entitled to actual and statutory damages.

60.     Plaintiff and FDCPA Class members are also entitled to an award of attorneys' fees and costs.

## COUNT TWO
## VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT, TEX. FIN. CODE § 392.001, *et seq.*

61.     Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above with the same force and effect as if the same were set forth at length herein.

62.     The acts of Defendant constitute violations of the TDCA. *See* TEX. FIN. CODE § 392.001 *et seq*.

63.     Defendant is a "debt collector" as defined by the TDCA.  *See* TEX. FIN. CODE §§ 392.001(6).

64.     Plaintiff is a "consumer" as defined by the TDCA.  *See* TEX. FIN. CODE § 392.001(1).

65. The debt that Defendant sought to collect was a consumer debt as defined by the TDCA. *See* TEX. FIN. CODE § 392.001(2).

66. The TDCA limits the rights of debt collectors in an effort to protect the rights of consumers.

67. The TDCA limits the rights of debt collectors in an effort to protect the rights of consumers.

68. Specifically, TEX. FIN. CODE § 392.302(2) makes it illegal for debt collectors, during debt collection, to oppress, harass or abuse a person by "placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass and threaten a person at the called number."

69. The numerous telephone calls by Defendant were made with the intent to annoy, harass and threaten Plaintiff, in violation of TEX. FIN. CODE § 392.302(2).

70. In addition, TEX. FIN. CODE § 392.302(4) makes it illegal for debt collectors, during debt collection to oppress, harass, or abuse a person by "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

71. The numerous telephone calls by Defendant were abusive, constituted harassment, and were made in violation of TEX. FIN. CODE § 392.302(4).

72. As a result of Defendant's violations of the TDCA, Plaintiff and Class Members are entitled to and do seek an injunction against Defendant to prevent or restrain further violations. TEX. FIN. CODE § 392.403(1).

73. Defendant's described actions in violation of the Texas Debt Collection Act have directly and proximately caused Plaintiff and Class Members injury for which they are entitled to actual damages, statutory damages and reasonable attorneys' fees and costs, declaratory relief, injunctive relief and other legal and equitable relief pleaded herein.

## COUNT THREE
### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C.A. § 227 ET SEQ.

74. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above with the same force and effect as if the same were set forth at length herein.

75. The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., restricts the making of telephone calls to cellular phones for commercial purposes that are made using "any automatic telephone dialing system." TCPA § 227(b)(A)(iii).

76. Defendant made telephone calls to Plaintiff's cell phone using an automatic telephone dialing service without consent, which was prohibited by the TCPA.

77. Defendant negligently disregarded the TCPA in using automated telephone dialing equipment to call Plaintiff's and the TCPA class' cellular telephones without express consent.

78. The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

79. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion."[5]

80. Defendant's phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

---

[5] Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. *See also* Mims v. Arrow Fin. Servs., L.L.C., 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("The Act bans certain practices invasive of privacy").

81. Defendant's phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone and cellular telephone line.

82. Defendant's phone calls harmed Plaintiff by intruding upon his seclusion.

83. Defendant's phone calls harmed Plaintiff by causing Plaintiff aggravation and annoyance.

84. Defendant's phone calls harmed Plaintiff by wasting Plaintiff's time.

85. Defendant's phone calls harmed Plaintiff by using minutes allocated to him by his cellular telephone service provider.

86. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and TCPA Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute pursuant to 47 U.S.C. § 227(b)(3)(B).

**COUNT FOUR**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C.A. § 227 ET SEQ.**

87. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

88. Defendant knowingly and/or willfully disregarded the TCPA by using automated telephone dialing equipment to call Plaintiff's and the class' cellular telephone without express consent.

89. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

90. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided

that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion."[6]

91. Defendant's phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

92. Defendant's phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone and cellular telephone line.

93. Defendant's phone calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

94. Defendant harassed Plaintiff by incessantly calling Plaintiff's telephone.

95. Defendant's phone calls harmed Plaintiff by causing Plaintiff aggravation and annoyance.

96. Defendant's phone calls harmed Plaintiff by wasting Plaintiff's time.

97. Defendant's phone calls harmed Plaintiff by using minutes allocated to Plaintiff by Plaintiff's cellular telephone service provider.

98. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the TCPA Class are entitled to treble damages of up to $1,500.00 for each and every call-in violation of the statute as provided by 47 U.S.C. § 227(b)(3).

## VIII.
## VICARIOUS LIABILITY

99. At all times relevant hereto, the individual debt collectors who contacted or attempted to contact Plaintiff and the Class Members were employed by Defendant and were working in the course and scope of their employment with Defendant. Defendant had the right to control their activities. Therefore, Defendant is liable for their actions, inactions, and conduct which violated

---

[6] Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. *See also* Mims v. Arrow Fin. Servs., L.L.C., 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("The Act bans certain practices invasive of privacy").

the FDCPA, TDCA and the TCPA and proximately caused damage to Plaintiff and each member of the classes as described herein.

## IX.
## JURY REQUEST

100. Plaintiff requests that this matter be tried before a jury.

WHEREFORE, Plaintiff and the Class Members pray that the Court enter judgment in their favor against Defendant as follows:

a. Enter an order certifying this action as a class action pursuant to FED. R. CIV. P. 23(b)(2) and/or 23(b)(3).

b. Declaring:
   i. Defendant's actions violated the FDCPA;
   ii. Defendant's actions violated the TDCA; and
   iii. Defendant's actions violated the TCPA;

c. Enjoin Defendant from committing further violations of the FDCPA, TDCA and the TCPA;

d. Awarding Plaintiff and Class Members actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant;

e. Awarding Plaintiff and Class Members statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant;

f. Awarding Plaintiff and Class Members actual and statutory damages and penalties under the TCPA and TDCA;

g. Awarding Plaintiff and Class Members reasonable attorneys' fees, expenses and costs pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant, including treble damages under 47 U.S.C.A. § 227(b)(3);

h. Awarding Plaintiff and Class Members punitive damages; and

i. Granting such other relief that equity and the law deems appropriate.

Dated:  March 22, 2017

Respectfully submitted,

By: /s/ Walt D. Roper
Walt D. Roper
TX State Bar No. 00786208
**THE ROPER FIRM, P.C.**
3001 Knox Street, Suite 405
Dallas, TX 75205
Telephone: 214-420-4520
Facsimile: 1+214-856-8480
Email: walt@roperfirm.com

**ATTORNEY FOR PLAINTIFF**